IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BARHYTE SPECIALTY FOODS, INC.,  )
an Oregon corporation,          )
                                )   Civil No. 07-855-JE
                    Plaintiff,  )
                                )   OPINION AND ORDER
         v.                     )
                                )
ACCUTEK PACKAGING EQUIPMENT     )
COMPANY, INC., a foreign corporation, )
                                )
                    Defendant.  )
_____ )

        Arden J. Olson
        Jason M. Ayres
        Harrang Long Gary Rudnick, P.C.
        1001 S.W. 5th Avenue, 16th Floor
        Portland, OR 97204-1116

            Attorneys for Plaintiff

        Joel A. Parker
        Daniel C. Peterson
        Schwabe, Williamson & Wyatt, P.C.
        1211 S.W. 5th Avenue, Suite 1900
        Portland, OR 97204

        John H. Donboli
        Del Mar Law Group, LLP
        322 Eighth Street, Suite 101
        Del Mar, CA 92014

            Attorneys for Defendant

1 - OPINION AND ORDER

JELDERKS, Magistrate Judge:

Plaintiff Barhyte Specialty Foods, Inc. (Barhyte) brings this breach of contract action against defendant Accutek Packaging Company, Inc. (Accutek). Accutek has asserted a counterclaim alleging that plaintiff Barhyte breached the parties' contract by failing to pay for equipment and services Accutek provided, and by unreasonably failing to accept equipment after alleged problems were remedied. Accutek seeks recovery of $40,444.78 on its counterclaim.

Plaintiff Barhyte moves for summary judgment on defendant Accutek's counterclaim. The motion is granted.

## BACKGROUND

Plaintiff Barhyte, an Oregon corporation with its principal place of business in Pendleton, Oregon, produces mustards, dressings, and related condiments. Defendant Accutek, a California corporation with its principal place of business in Vista, California, manufactures bottling, capping, and labeling equipment.

This action arises out of plaintiff Barhtye's purchase of bottling equipment from defendant Accutek. In September, 2005, the parties began negotiations for a line of equipment to package Barhyte's products, and Barhyte sent Accutek a purchase order on November 7, 2005, for equipment valued at $229,842.50. Barhyte paid Accutek $68,952.75 in December, 2005.

On April 24, 2006, Accutek sent Barhyte an invoice in the amount of $236,824 for the equipment line that Barhyte had ordered. Barhyte paid the outstanding amount owing on the invoice, less $3,686 in shipping charges, in May, 2006. The equipment was delivered to Barhyte on June 5, 2006.

After the equipment was delivered, Mike Barhyte, plaintiff's Vice President of Operations, contacted Accutek to report problems with certain parts of the equipment.

Accutek performed a site visit in August, 2006, but the problems were not resolved to Barhyte's satisfaction.

On October 11, 2006, counsel for Barhyte sent Accutek a letter revoking acceptance of the equipment that Barhyte was not satisfied with. The parties subsequently negotiated for repairs and additional parts for the equipment. In an agreement concluded on December 4, 2006, Barhyte agreed to pay the $3,686 freight charge outstanding on the original order, and the parties agreed on the costs of previous and future service calls. Accutek agreed to issue a credit memo for certain invoices, and agreed that an invoice numbered 62450 would be deemed paid in full upon receipt of $2,505 from Barhyte. The parties agreed that Accutek would ship certain parts to Barhyte and would send technicians to perform agreed upon tasks for Barhyte, and that Barhyte would pay Accutek an agreed upon amount. Pursuant to the agreement, Barhyte paid Accutek a total of $8,489.

Accutek technicians performed a site visit to Barhyte's plant on March 27th and 28th, 2007. On May 7, 2007, counsel for Barhyte sent Accutek a letter stating that certain problems with the equipment supplied by Accutek persisted. The letter stated that Barhyte was again revoking its acceptance of the filler and sleever/bander, and requested that Accutek accept the return of this equipment and reimburse Barhyte $119,706 for the cost of the equipment in lieu of litigation.

On May 15, 2007, Accutek brought an action against Barhyte in San Diego Superior Court alleging claims for breach of contract, open account, and account stated. Accutek alleged that Barhyte had failed to pay $40,444.78 owing for "equipment and services which had been provided on credit at [Barhyte's] special instance and request." Barhyte filed an answer asserting affirmative defenses and counterclaims for damages in the amount of $213,515.34. In the present action, Accutek has asserted a counterclaim alleging that Barhyte owes it $40,444.78.[1]

---

[1] In materials related to the pending motion for summary judgment, Accutek now asserts that Barhyte owes it $40,506.78, an additional $62.00.

3 - OPINION AND ORDER

Before it filed its complaint in San Diego Superior Court, Accutek had submitted no documents or invoices to Barhyte asserting that it owed the $40,444.78 sought in the counterclaim in this action. According to its responses to interrogatories, Accutek decided to rescind discounts in May, 2007. In response to Barhyte's interrogatory asking how that figure had been calculated, Accutek asserted that, based upon the equipment purchase agreement, "the front page of every invoice," its promotional material, and correspondence dated June 9, 2006, from its operations manager, Barhyte knew that "if it failed to timely pay for the equipment and related services and parts, all warranties and discounted parts and services would be rescinded and [Barhyte] would be charged in full for past discounted parts and services." It added that Barhyte's "refusal of acceptance of the equipment was a material breach of the equipment purchase agreement."

The parties disagree as to whether their equipment purchase contract included a provision allowing Accutek to rescind any discounts or credits it had extended if Barhyte failed to timely pay invoices. Accutek contends that the price quotation it mailed to Barhyte on May 25, 2005, specified its right to rescind in the following terms: "Credits and discounts on any invoices deemed past due will be rescinded and finance charges will accrue at 1.5% per month on the balance until fully paid." Accutek asserts that this provision was also included in a "Customer Acceptance Agreement" that Mike Barhyte, Barhyte's Vice President of Operations, signed on Barhyte's behalf on April 28, 2006. Barhyte contends that a rescission provision first appeared in documents that it received only after all the material terms of the parties' contract had been concluded. It asserts the first documents in its files referring to Accutek's alleged right to rescind discounts and credits are dated May 31, 2006. On the bottom of Accutek's Invoice 61484, which is dated May 31, this statement appears in small capital letters:

> ALL DISCOUNTS AND CREDITS WILL BE RESCINDED ON ANY PAST DUE ACCOUNTS IN ADDITION TO A FINANCE CHARGE 06 (sic) 1.5% PER MONTH.

The same terms appear on 16 other invoices from Accutek dated May 31, 2006, or later.

4 - OPINION AND ORDER

**STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56©) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. <u>Id.</u> When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. <u>Id.</u> at 324.

The substantive law governing a claim or defense determines whether a fact is material. <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. <u>Id.</u> at 630-31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1985). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**DISCUSSION**

As noted above, the parties dispute whether a provision allowing Accutek to rescind discounts and credits on past due invoices or accounts was incorporated into the parties' contract. Accutek asserts that, from the parties' first negotiations, a provision allowing rescission of discounts and credits was included in documents incorporating the material terms of the parties' agreement. Barhyte disagrees, and asserts that the provision was first included in an invoice dated May 31, 2006, which Accutek sent <u>after</u> the parties had concluded their negotiations and all material terms of the purchase agreement had been fixed.

In analyzing Barhyte's motion for summary judgment on Accutek's counterclaim, it is not necessary to determine whether a provision allowing for rescission of discounts and credits was part of the parties' original agreement. Assuming that the provision was part of the parties' agreement, material in the record before the court supports only the conclusion that Barhyte failed to timely pay only the freight charge of $3,686 for the equipment Accutek shipped in April, 2006. Any dispute as to Barhyte's obligation to pay that charge was resolved in December, 2006, when the parties negotiated a resolution of their then outstanding disputes. There is no question that Barhyte paid the outstanding freight charge, along with additional charges, and that Accutek did not purport to rescind any credits or discounts at any time before it filed its complaint against Barhyte in the San Diego Superior Court.

Assuming that a provision allowing Accutek to rescind any credits and discounts if Barhyte's account was past due was part of the parties' agreement, the parties clearly negotiated a resolution of any dispute as to Barhyte's outstanding account, and there is no question that Barhyte performed its obligation to pay the outstanding freight charge. After Barhyte unquestionably discharged its contractual obligation to pay the outstanding shipping charge as part of the parties' December 2006 agreement, Accutek could not assert any previous right it may have had to rescind discounts and credits, because such rescission was fundamentally inconsistent with the parties' December 2006 agreement.[2] The December 2006 settlement resolved all material issues that were outstanding between the parties at that time,

---

[2] The affidavit of Darren Chocholek, Accutek's Vice President and CFO, submitted in support of Accutek's opposition to the motion for partial summary judgment, supports only the conclusion that any right to rescind any credits and discounts that Accutek may have had ended with the parties' resolution of their dispute in December, 2006. Chocholek states that he "specifically informed [Barhyte's counsel] that Accutek was continuing to negotiate with Barhyte in an effort to get the disputes amicably resolved," and "specifically informed [counsel] that Accutek was not waiving its right to rescind all previously offered discounts because of Barhyte's delinquent account . . . in the event that the dispute was not amicably resolved." Given that the record supports only the conclusion that the parties' dispute was "amicably resolved" in December, 2006, and that Barhyte performed its obligation to pay amounts agreed to in the settlement, any right that Accutek otherwise may have had to rescind credits and discounts was terminated by the settlement.

6 - OPINION AND ORDER

and in doing so extinguished any right that Accutek might otherwise have had to rescind credits and discounts. After Barhyte paid the outstanding freight charge, it was no longer delinquent as to that charge, and Accutek could no longer premise any rescission of credits or discounts on that charge.

It cannot be reasonably asserted that the parties agreed to a resolution of their dispute which would allow Accutek to unilaterally rescind discounts and credits worth tens of thousands of dollars at some future time. Any right to rescind was either negotiated away in the parties' resolution of their dispute, or was waived as part of those negotiations. If the parties had intended that, though other issues were resolved, Accutek would retain the right to unilaterally rescind substantial credits and discounts at some future time, even if Barhyte made the payments required in the settlement, that intention would have to be noted in some document. In the absence of specific documentation that the parties intended that Accutek retain some right to rescind credits and discounts even if Barhyte made the payments it agreed to make, the court cannot assume a mutual contractual intention that is this manifestly inconsistent with the other terms of the parties' agreement.

In addition to an absence of evidence that would otherwise allow Accutek to prevail on its claim that it had a right to rescind credits and discounts after the parties resolved disputes concerning the freight charge in December, 2006, there is no evidence in the record supporting the conclusion that Accutek actually ever rescinded these cost reductions at any time before bringing its action against Barhyte. There is no evidence in the record before the court that Accutek ever rescinded the discounts and credits sought in its counterclaim, ever informed Barhyte that it owed this amount, or ever demanded payment from Barhyte until it brought its action in San Diego County Superior Court.

Finally, though Accutek appears to argue that Barhyte's failure to timely pay freight charges on one delivery entitled it to rescind credits and discounts reflected in numerous invoices long after the dispute as to those charges had been resolved, the rescission provision on which it relies cannot be read so broadly. As noted above, the provision upon which

Accutek relies simply states that credits and discounts will be rescinded "on any invoices deemed past due." The bulk of the discounts and credits which Accutek purported to rescind were not related to invoices that could reasonably have been deemed "past due" at any time, and the invoice including the $3,686 shipping charge could no longer be reasonably deemed "past due" after Barhyte paid the charge as part of the parties' agreement in December, 2006.

For the foregoing reasons, plaintiff Barhyte's motion for partial summary judgment is granted.

## CONCLUSION

Plaintiff Barhyte's motion for partial summary judgment (#30) is GRANTED.

Dated this 8th day of April, 2008.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

8 - OPINION AND ORDER